IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 20-cr-036-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.    JORGE DE LA ROSA-CALDERON,
2.    EMILIO JOSIAH DEHERRERA,
3.    JANINE JANELLE DEHERRERA,
4.    ALEXZANDER BLAIR, and
**5.    WESLEY PAPPAS,**

     Defendants.

---

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WESLEY PAPPAS'S MOTION *IN LIMINE*

---

This matter is before the Court on Defendant Wesley Pappas's Motion *in Limine* ("Motion"), filed on July 19, 2021.  (ECF No. 273.)  The Government responded on July 21, 2021.  (ECF No. 277.)

The Court presumes familiarity with the facts of the case, as well as the Court's prior orders.  For the reasons set forth below, the Motion is granted in part and denied in part.

### I. LEGAL STANDARDS

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ."  *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges

have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action."  Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

As the movant, Pappas "has the burden of demonstrating that the evidence is inadmissible on any relevant ground," and a court "may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded."  *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (quoting *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d, 1078, 1082 (D. Kan. 2000)).

## II. ANALYSIS

In the Motion, Pappas requests that the Court issue an order precluding the Government "offering or commenting on the following evidence": (1) Pappas's gang affiliation; (2) the fact that Pappas was shot; (3) the body armor discovered from 3460 South Lincoln (the "Residence"); (4) the weapons and ammunition seized from the Residence; (5) testimony by William Mills that he observed Pappas to have a machine gun; (6) Pappas's status as a probationer under supervision; (7) the prescription drugs and prescription bag seized from the Residence; and (8) the pole camera photographs

from the Residence.  (ECF No. 273 at 1.)  Pappas further requests an order "permitting him to elicit testimony from law enforcement agents of parts of the post-arrest statement of co-defendant Janine DeHerrera."  (*Id.*)

## A.    Preliminary Remarks

Pursuant to the undersigned's Revised Practice Standards, all motions *in limine* were due no later than 10 days prior to the Final Trial Preparation Conference.  (*See* WJM Rev. Prac. Standards § III.G.3.)  Pappas did not file a motion *in limine* by that time; however, on July 14, 2021, Pappas filed the Unopposed Motion for Leave to File Motion *in Limine* Later than 10 Days Prior to the Final Trial Preparation Conference ("Motion for Leave").  (ECF No. 265.)  In the Motion for Leave, Pappas represented that "[b]ased the timing of the [G]overnment's disclosure of [William Mills as a witness] and additional discovery produced on July 13, 2021, the defense could not comply with WJM Revised Practice Standard § III.G.3 and timely file its Motion *in Limine* 10 days prior to the Final Trial Preparation Conference."  (*Id.* at 2.)  The Court granted the Motion for Leave based on this representation.

However, after reviewing the Motion, the Court notes that most of the evidence that Pappas seeks to exclude does not appear to relate to the Government's July 13, 2021 disclosures, or are matters than Pappas should have been able to anticipate prior to the Court's deadline for motions *in limine*.[1]  Defense counsel's representation that they could not have filed the Motion pursuant to the deadlines imposed by the Court's Revised Practice Standards appears strained, at best.

---

[1] Moreover, based on the Government's response to the Motion, it appears that a simple conferral with the prosecution may have eliminated the need to file a Motion relating to topics

The Court could deny most of the Motion as untimely on this basis.  Nonetheless, the Court will consider each of the issues raised by the Motion solely to reduce any potential delays and lengthy sidebars at trial to resolve these evidentiary issues.

**B.    Pappas's Gang Affiliation**

Pappas states that the Government has produced evidence that Pappas is in the State of Colorado Gangs database as a member of the Gallant Knights Insane ("GKI"). (ECF No. 273 at 3.)  He argues that there is no evidence demonstrating that the evidence against Pappas is "tied to or used to further gang activities," that the Government "cannot show that the evidence of gang affiliation is directed toward establishing something other than [his] propensity to commit the act charged," and that "[a]ny probative value of gang affiliation evidence is irrelevant to the charges and would be substantially outweighed by the danger of unfair prejudice" to Pappas.  (*Id.*)

The Government responds that it anticipates that Pappas will "attempt to distance himself from his residence and the drugs located there" and that his gang affiliation is admissible as: (1) impeachment evidence of Jorge De La Rosa-Calderon's bias as a defense witness; and (2) as evidence linking Pappas to the Residence.  (ECF No. 277 at 2.)

The Court will consider each of the Government's arguments below.

1.    <u>Gang Affiliation as Impeachment Evidence</u>

The Government argues that because Pappas and De La Rosa-Calderon are both GKI gang members, the jury must be presented with this information to evaluate "any evidence presented to deny any relationship or association between the two" and

---

implicated by the Government's July 13, 2021 disclosures.

De La Rosa-Calderon's potential bias as a witness. (*Id.* at 2–3.)

The Tenth Circuit has determined that "evidence of gang affiliation is admissible for proving a witness's bias if a proper foundation is laid and the evidence is not more prejudicial than probative" and that "the party seeking to introduce evidence of gang membership can lay a foundation by demonstrating either '[1] membership on the part of the defendant and the witness whose credibility is at issue in a common gang, or [2] that the witness' testimony was biased due to fear.'" *United States v. Tsosie*, 288 F. App'x 496, 499 (10th Cir. 2008) (quoting *United States v. Elkins,* 70 F.3d 81, 84 (10th Cir. 1995)). This two-part test is disjunctive, which means the party seeking the admission of such evidence need only lay one of the two possible foundations. *Elkins*, 70 F.3d at 84. "Even if a proper foundation is laid, the district court must also conclude the evidence is more probative than prejudicial." *Tsosie*, 288 F. App'x at 499.

Impeachment evidence that De La Rosa-Calderon's testimony may be biased in favor of his fellow gang member is highly probative. *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("A witness' and a party's common membership in an organization . . . is certainly probative of bias."); *United States v. DeSoto*, 950 F.2d 626, 630 (10th Cir. 1991) ("Questions properly directed at revealing bias are . . . a permissible basis of impeachment, and are relevant and admissible.").

Pappas has not demonstrated that the potential prejudice resulting from the introduction of his status as a gang member outweighs the value of the evidence in evaluating the credibility of De La Rosa-Calderon's testimony. Accordingly, to the extent that the Government lays an adequate foundation to establish that De La Rosa-Calderon and Pappas are members of a common gang, their gang affiliation is

admissible in the form of impeachment or rebuttal evidence, either as cross examination during the Defendant's case, or in rebuttal, to the extent rebuttal evidence is permitted at all by the Court, to show potential witness bias on the part of De La Rosa-Calderon.

The Government is directed to be prepared **after the lunch break on Monday, August 2, 2021** to discuss how it plans to lay the proper foundation for De La Rosa-Calderon and Pappas's membership in a common gang.  *See, e.g.*, *Tsosie*, 288 F. App'x at 499 (establishing foundation for common gang membership through voir dire examination of investigator); *United States v. Keys*, 899 F.2d 983, 987 n.2 (10th Cir. 1990) (recognizing that the government may establish its foundation of common gang membership through extrinsic evidence); *United States v. Gonzalez*, 155 F. App'x 5880, 583 (3d Cir. 2005) (recognizing it would have been "more prudent" for the government to proffer evidence in its possession linking defendant and defense witness to a common gang before it questioned that witness); *United States v. Hankey*, 203 F.3d 1160, 1166 (9th Cir. 2000) (allowing rebuttal expert witness to testify regarding common gang affiliation of defendant and defense witness based on foundation established outside of the presence of the jury).

      2.    <u>Gang Affiliation as Evidence of Pappas's Ties to the Residence</u>

The Government also argues that it believes Pappas "will attempt to distance himself from his residence and the drugs located there" and that "[t]hese efforts place [Pappas's] gang affiliation directly at issue in this trial."  (ECF No. 277 at 2.)  According to the Government, "GKI gang members wear the color purple and it is proper for the jury to know this when evaluating the evidence located in the [R]esidence that is indicative of GKI gang affiliation in order to assess any defense arguments that the

6

[R]esidence, or the evidence in the [R]esidence, did not belong to [Pappas]." (*Id.* at 3.)

Whether the probative value of evidence of Pappas's gang affiliation for this purpose is substantially outweighed by a danger of unfair prejudice is a very close call. The Court agrees that evidence of Pappas's possible gang affiliation and the fact that GKI gang members wear purple has some probative value and may assist the jury in evaluating Pappas's ties to the Residence.  Ultimately, and most importantly because the Government has considerable other evidence tying Pappas to the Residence, the Court concludes that the prejudicial nature of this evidence outweighs its probative value as part of the Government's case-in-chief.  Accordingly, the Court will not permit the Government to introduce evidence of Pappas's potential gang affiliation during its case-in-chief to demonstrate Pappas's ties to the Residence.

However, the Court's Rule 403 analysis shifts if Pappas directly places his ties to the Residence at issue by presenting evidence (as opposed to mere attorney argument) that 3460 South Lincoln is not his Residence.  In such a scenario, the Court believes that the probative value of the evidence outweighs its potential prejudice, and the Government will be allowed to introduce evidence of Pappas's possible gang affiliation to demonstrate his ties to the Residence in the form of impeachment or rebuttal evidence, either as cross examination during the Defendant's case, or in rebuttal, to the extent rebuttal evidence is permitted at all by the Court.

3.    Limiting Instructions

If the Government decides to introduce evidence of Pappas's possible gang affiliation for either purpose outlined above, the Court believes that the jury should be given one or more limiting instructions to minimize any prejudicial effect of the evidence.

7

*See Tsosie*, 288 F. App'x at 500 (recognizing that a limiting instruction regarding possible gang membership diminishes the prejudicial effect of the evidence).

Accordingly, to the extent that the Government intends to put on evidence of Pappas's possible gang affiliation, the Government is directed to file one or more limiting instructions on or before **8:30 a.m. on Monday, August 2, 2021** that instructs the jury, *inter alia*, that they may only consider the evidence to evaluate potential witness bias and/or to consider possible ties between Pappas and the Residence.[2]  To the extent defense counsel wishes to submit their own proposed limiting instruction(s), they may also do so pursuant to the same deadline.

For the reasons stated above, with regard to the issue of gang affiliation, the Motion is granted in part and denied in part as set forth herein.

## C.   The Shooting of Pappas and Prescription Drugs Found at the Residence

Pappas states that he was recovering from being shot when law enforcement searched the Residence and recovered a prescription pill bottle and bag from a prescription for Oxycodone HCL 10 MG tablets that included the direction: "[t]ake one tablet by mouth three times a day as needed for chest pain gunshot wound."  (ECF No. 273 at 4.)  Pappas contends that because "[a]ny probative value of evidence of . . . having been shot in the back is irrelevant to the charges and would be substantially

---

[2] Because the Court plans to read a limiting instruction to the jury each time evidence of Pappas's possible gang affiliation is introduced, the Government should submit separate jury instructions for each of its intended uses.  For example, if the Government intends to introduce the evidence as impeachment evidence of possible witness bias *and* as rebuttal evidence demonstrating Pappas's ties to the Residence, the Government should submit separate proposed limiting instructions that inform the jury of the limited purposes for which they may consider the evidence in each instance.

outweighed by the danger of unfair prejudice to Mr. Pappas," the Court should exclude any evidence of Pappas being shot, including the prescription drugs and prescription bag.  (*Id.*)

The Government responds that it has "no intention of introducing evidence in its case-in-chief surrounding [Pappas's] shooting."[3]  (ECF No. 277 at 4.)  However, the Government argues that it plans to introduce evidence pertaining to the prescription located in the Residence to establish Pappas's occupancy in the Residence.  (*Id.*)  To address Pappas's concerns that the jury will learn that he was shot, the Government offers to redact the photograph of the prescription bag to omit the reason for the pain medication.  (*Id.*; ECF No. 277-1.)

The Court agrees that the fact that Pappas was shot has no relevance to the charges underlying this case.  But the Court does not agree that this conclusion requires the complete exclusion of the prescription drugs and prescription bag.  To the contrary, the Government's offer to redact the reason for the pain mediation from the evidence of the prescription appropriately cures Pappas's concerns.

Accordingly, the Motion is denied to the extent Pappas seeks to exclude evidence of the prescription and prescription bag.  The Government is directed to add the redacted photograph of the prescription bag that omits the reason for the pain medication to its amended final exhibit list due on Wednesday, July 28, 2021.

**D.     Body Armor, Weapons, and Ammunition Seized from the Residence**

Pappas next seeks to exclude evidence of body armor, weapons and ammunition

---

[3] The Government clarifies that it also does not intend to elicit a statement by Mills that Pappas had been shot.  (ECF No. 277 at 5.)

seized from the Residence, and Mills's statement that he observed Pappas to have "multiple firearms . . . [including] big ones, like a machine gun."  (ECF No. 273 at 4.) Pappas argues that this evidence constitutes evidence of other crimes, wrongs, or acts under Federal Rule of Evidence 404(b) and that the Government has not adequately provided notice of its intent to introduce such evidence at trial, as required by Rule 404(b)(3).  (*Id.*)

The Government responds that it "has no intention" of eliciting Mills's statement that he observed Pappas in possession of firearms and that to the extent it believes that Pappas has opened the door to this testimony, it "will seek either a bench conference or will raise this outside of the presence of the jury in order to obtain the Court's permission before eliciting this testimony."  (ECF No. 277 at 5.)

The Court will hold the Government to its representation that it will not attempt to introduce evidence of Mills's statement that he observed Pappas to be in possession of firearms.  As such, there is no evidentiary dispute regarding this evidence, and this portion of the Motion is denied as moot.

The Court notes that the Government did not explicitly state whether it intends to introduce evidence of body armor or weapons and ammunition seized from the Residence.  (*See* ECF No. 277 at 5.)  Nonetheless, because the Government neither provided notice of its intent to introduce this evidence under Rule 404(b) to Pappas nor states in its Response that it intends to introduce this evidence, the Court presumes that the Government does not intend to do so and does not need to address this portion of the Motion.

F.    **Pappas's Placement at a Halfway House**

According to Pappas, Mills informed law enforcement that "after the [Pappas's] unspecified arrest, he was put into a halfway house."  (ECF No. 273 at 5.)  Pappas requests that this evidence be excluded, arguing that the probative value of the evidence is outweighed by the danger of unfair prejudice to Pappas.  (*Id.* at 5–6.)

In response, the Government represents that it "has no intention of eliciting that the [D]efendant was placed in a halfway house in an effort to introduce evidence of prior criminal activity" and will instruct Mills "to not mention specifically [Pappas's] initial placement at a halfway house."  (ECF No. 277 at 6.)  The Government further states that "[i]f there is no way for [Mills] to testify truthfully as to the timing of the [Pappas's] sublease, the [G]overnment will raise this with the Court outside of the presence of the jury in order to address this issue."  (*Id.*)

The Court will hold the Government to its representation that it will not introduce evidence of Pappas's placement in a halfway house.  Because there is not a continuing evidentiary dispute regarding this evidence, this portion of the Motion is denied as moot.

G.    **Pole Camera Evidence**

According to Pappas, the Government produced a series of pole camera still images which are not identified by date or time.  (ECF No. 273 at 6.)  While law enforcement had placed a pole camera outside of the Residence between January 7, 2020 and February 5, 2020, "[d]ue to technical difficulties during the downloading process, footage for the pole camera located at [the Residence] for the days of January 7 – January 23, 2020 were written over and unable to be recovered."  (*Id.*)  Pappas argues that "[w]ithout more information as to the specific dates / times of the pole

11

camera still shots which the prosecution will seek to admit, the Court should prohibit the admission of this evidence due to the danger of misleading the jury as to when the activity depicted in the still shots occurred."[4]  (*Id.* at 6–7.)

According to the Government, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Travis Johnson "routinely reviewed the pole camera footage," took notes and screenshots as part of his review process, and will be available at trial for cross-examination.  (ECF No. 277 at 6–7.)  The Government argues that "[a]ny argument as to the specific date or time within the period of January 7 and February 5, 2020 during which these screen shots were taken goes to the weight and not the admissibility of this evidence."  (*Id.* at 7.)  The Court agrees.

Significantly, the entire duration of the pole camera's placement at the Residence occurred within the time frame of the purported conspiracy charged in Count Three of the Superseding Indictment.  (*See* ECF No. 38 at 2 (charging a conspiracy "[f]rom a time unknown but not later than December 2019, up to and including or about February 5, 2020").)  Moreover, ATF Special Agent Johnson, who reviewed the pole camera footage and took the screenshots, will be available at trial to answer questions regarding the footage.  Pappas's objections to the pole camera still shots go more to the weight of evidence, and any perceived insufficiencies in the evidence may be adequately addressed on cross-examination.  The Court therefore cannot conclude that the pole camera still shots carry a danger of misleading the jury that outweighs their

---

[4] The Court notes that Pappas does not argue that the spoliation of portions of the pole camera evidence requires exclusion of the remaining footage.  Accordingly, the Court will not consider this possibility.

probative value.

This portion of the Motion is therefore denied.

**H.      Janine DeHerrera's Statement to Law Enforcement**

Pappas requests an order permitting him to elicit testimony from law enforcement agents of parts of co-defendant Janine DeHerrera's post-arrest statement, in which she purportedly informed law enforcement that she had been inside the Residence with Pappas's wife, does not know Pappas's name, and that she and Pappas's wife "sit there, talk, cook, watch TV and smoke weed."  (ECF No. 273 at 1, 7.)

Pappas argues that such testimony is admissible for various reasons: (1) he anticipates that although DeHerrera has been subpoenaed as a witness by the Government, she will invoke her right against self-incrimination under the Fifth Amendment; (2) her statement constitutes *Brady* evidence; (3) because her statement was voluntary and has an indicia of reliability, the exclusion of the statement may result in a due process violation; (4) even if DeHerrera's statement is hearsay, the testimony is admissible under Federal Rule of Evidence 807; and (5) the exclusion of the evidence would violate Pappas's Sixth Amendment right to present a defense.  (*Id.* at 7–8.)

In response, the Government represents that it has attempted to subpoena DeHerrera, but DeHerrera's counsel has not accepted service of a subpoena for her or indicated whether she would assert her Fifth Amendment rights.  (ECF No. 277 at 7.) As such, the Government represents that it "does not have this witness under subpoena and cannot call her to the stand if she intends to assert her Fifth Amendment rights." (*Id.*)  The Government further argues that Pappas "seeks to circumvent . . . DeHerrera's Fifth Amendment rights by admitting parts of her post-*Miranda* interview" and that

13

Pappas has failed to demonstrate that the statement should be admitted.  (*Id.*)

To the extent that DeHerrera takes the stand and testifies as a witness at trial, this issue is moot because Pappas may cross-examine DeHerrera about her statement to law enforcement.  Nonetheless, the Court will examine each of Pappas's arguments regarding the admissibility of DeHerrera's statement in the event that DeHerrera does not appear or asserts her Fifth Amendment rights at trial.

1.   <u>Whether Exclusion of the Statement Would Constitute a Due Process Violation</u>

It is well-established that

> the hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact.  Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury

*Chambers v. Mississippi*, 410 U.S. 284, 298 (1973).

However, in *Chambers*, the Supreme Court ruled that the due process rights of a defendant on trial for murder were violated where the trial court refused to allow the defendant, pursuant to the hearsay rule, to introduce spontaneous confessions made by a third party on separate occasions shortly after the murder to three separate close acquaintances.  *Id.* at 298–302.  The Supreme Court reasoned that the hearsay rule should not have been "applied mechanistically to defeat the ends of justice" where the testimony "bore persuasive assurances of trustworthiness," was "well within the basic

rationale of the exception for declarations against interest," and "was critical to [the defendant's] defense."  *Id.* at 302.

Citing *Chambers*, Pappas argues that DeHerrera's statements bore "sufficient indicia of trustworthiness" to support their admission into evidence because she voluntarily made her statement shortly after she was arrested and was advised of her *Miranda* rights, and because she "did not have the opportunity to develop a plausibly inaccurate version of events."  (ECF No. 273 at 7.)

In the Court's view, these facts do not demonstrate the reliability of DeHerrera's statement.  After all, individuals under arrest frequently attempt to minimize their role in any criminal conduct, and as often as not do so rather promptly, without much reflection, if any.  Moreover, DeHerrera's statement is unlike the statements at issue in *Chambers* in material respects, which weighs against any determination that it must be admitted at trial, notwithstanding the rules against hearsay.

First, DeHerrera's statements are exculpatory, not "self-incriminatory and unquestionably against self interest."  *Chambers*, 410 U.S. at 301.  Unlike the third party in *Chambers*, DeHerrera potentially had much to gain by disclaiming any role in a narcotics conspiracy after she was under arrest.

Second, in *Chambers*, the third party's confession was corroborated by other evidence and was critical to the defense.  *Id.* at 300–02.  Pappas makes no attempt to corroborate the DeHerrera's statement with *any* evidence, nor does he offer any arguments about how DeHerrera's statement is critical to his defense.

Third, in *Chambers*, the third party who confessed to the murder was present in the courtroom and under oath; as such, the prosecutor could have cross-examined him,

and the jury could have weighed his demeanor and his responses.[5]  *Id.* at 301.  By contrast, if DeHerrera does not testify in court or invokes her Fifth Amendment privilege against self-incrimination, the Government will not be able to cross-examine her regarding her statement to law enforcement.

Accordingly, for the reasons set forth above, the Court concludes that the present situation is distinguishable from *Chambers* and that Pappas has failed to establish that his due process rights will be violated if he is not allowed to introduce DeHerrera's hearsay statement into evidence.

2.    Whether the Statement is Admissible Pursuant to *Brady v. Maryland*

Pappas argues that "parts of [DeHerrera's] statement constitute evidence favorable to [him] under *Brady v. Maryland*, 373 U.S. 83 (1963) and [he] should not be prevented from having the jury hear it."  (ECF No. 273 at 7.)

But *Brady* relates to a prosecutor's obligation to *disclose* evidence favorable to an accused and does not address the subsequent admissibility of that evidence at trial. 373 U.S. at 87 ("We hold now that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . .").  Notably, Pappas offers no case law for the proposition that *Brady* requires that a favorable hearsay statement be introduced as evidence when the witness does not testify at trial, nor is the Court aware of any.

Moreover, the Court notes that Pappas decided not to endorse DeHerrera as a trial witness.  (ECF No. 260.)  Pappas's decision to not even attempt to secure

_____

[5] In *Chambers*, the defendant was not permitted to cross-examine this witness regarding his numerous spontaneous confessions to the murder due to a Mississippi common law rule

DeHerrera's presence at trial as a defense witness weighs heavily against his argument that he should be entitled to selectively introduce portions DeHerrera's hearsay statement to law enforcement into evidence pursuant to *Brady* or any other theory.

      3.    <u>Whether the Statement is Admissible Pursuant to Federal Rule of Evidence 807</u>

Federal Rule of Evidence 807, the Residual Exception to the Rule Against Hearsay, provides:

> Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>>
>> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Pappas argues that DeHerrera's statements "are admissible under Rule 807 because they are (1) supported by sufficient guarantees of trustworthiness and (2) are more probative on the point for which it is offered than any other evidence that Mr. Pappas can obtain through reasonable efforts." (ECF No. 273 at 8.)

However, for the reasons explained in Part III.H.1, the Court finds that Pappas has failed to establish that DeHerrera's statement bears sufficient guarantees of trustworthiness. Moreover, the Court notes that Pappas has failed to provide any evidence demonstrating that DeHerrera's statement is more probative on the point for which it is offered than any other evidence that Pappas can obtain through reasonable

---

that a party may not impeach his own witness. 410 U.S. at 295.

efforts.  As such, DeHerrera's hearsay statement is not admissible pursuant to Rule 807.

        4.    <u>Sixth Amendment Rights</u>

Pappas argues that excluding DeHerrera's statement would violate his Sixth Amendment right to present a defense.  (ECF No. 273 at 8.)  However, because he does not develop this argument or cite any case law supporting this contention, Pappas has waived this argument.  *See Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (*quoting Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990))).

Accordingly, this portion of the Motion is denied.

## III. CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

1.    Defendant's Motion *in Limine* (ECF No. 273) is GRANTED IN PART AND DENIED IN PART as set forth herein; and

2.    As also set forth herein, to the extent the Government intends to introduce evidence of Pappas's potential gang affiliation, it is DIRECTED to file proposed limiting jury instruction(s) on this topic on or before **<u>8:30 a.m. on Monday, August 2, 2021</u>**; to the extent he wishes to do so, Pappas may also file his own proposed limiting jury instruction(s) pursuant to the same deadline.

Dated this 27th day of July, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge

19